USDC SDNY
DOCUMENT
ELECTRONICALLY FILE
DOC #:
D.  1/19/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

GISELE KAMANOU,                                            :

                                    Plaintiff,            :          REPORT & RECOMMENDATION

                                                          :          10 Civ. 7286 (GBD) (JLC)

                        -v.-                               :          (Non-ECF Case)

                                                          :

THE EXECUTIVE SECRETARY OF THE                            :
COMMISSION OF THE ECONOMIC                                :
COMMUNITY OF WEST AFRICAN STATES,                         :

                                    Defendant.            :

--------------------------------------------------------------x

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable George B. Daniels, United States District Judge:**

Plaintiff Gisele Kamanou, proceeding pro se, brings this action against Defendant The

Executive Secretary of the Commission of West African States ("ECOWAS") alleging copyright

infringement under the 1976 Copyright Act (the "Act"), 17 U.S.C. § 101 et seq., perjury, tortious

interference with contract, slander, and intentional and negligent infliction of emotional distress.

ECOWAS has moved to dismiss Kamanou's Second Amended Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

be granted.  For the reasons set forth below, I recommend that the motion be granted.

## I.    BACKGROUND

### A. Factual Background

The following facts, taken from the Second Amended Complaint, are accepted as true for

purposes of the motion to dismiss.  (See Second Amended Complaint, dated June 25, 2011

("Compl.") (Dkt. No. 24)).  Kamanou, a citizen of Cameroon, has a Ph.D. in Applied Statistics

from the University of California, Berkeley.  (See Complaint, dated May 17, 2010 (Dkt. No. 2),

at 2; Compl. ¶¶ 22, 39).  She is "a well-known international expert in poverty statistics and

statistical indicators at the United Nations." (Id. ¶ 22). Kamanou began her employment with the United Nations in 1989 and worked primarily in the United Nations Statistics Division ("UNSD"). (Id.). Between June 2004 and August 2006, "as part of her official duties" at the UNSD, Kamanou "created, formulated and prepared" a publication entitled the "ECOWAS Poverty Profile" (the "EPP"). (Id.). The EPP was a collaboration between the UNSD and ECOWAS, which is an intergovernmental organization comprised of 15 West African countries with a principal place of business in Nigeria. (Id. ¶¶ 9, 43-46; Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint, dated Aug. 9, 2011 ("Def. Mem.") (Dkt. No. 30), at 1). Kamanou characterizes the EPP as "the first publication on Poverty Statistics ever prepared and published by the United Nations." (Compl. ¶ 1). Kamanou's work on the EPP entailed training nearly 150 officials from around the world in poverty statistics (Id. ¶ 41), traveling to Africa on several occasions to meet with experts, consultants, and trainees (Id. ¶¶ 41, 44, 46, 49-51, 54), drafting an annotated outline of the EPP (Id. ¶ 45), assisting in the compilation of country data for the EPP (Id. ¶¶ 50-53), and completing the first draft of the EPP. (Id. ¶ 53). In August 2006, prior to taking a medical leave of absence from the United Nations, Kamanou traveled to Abuja, Nigeria to present the full draft of the EPP to members from nearly all of the countries in the ECOWAS region. (Id. ¶¶ 54, 56). Kamanou returned from medical leave and resumed work in July 2007. (Id. ¶ 56). She was informed by another UNSD employee in "late 2007" that the EPP had been published in November 2007. (Id. ¶¶ 23, 56).

Kamanou states that in the final version of the EPP, she was not given any attribution for her work. (Id. ¶ 24). In February and March 2008, Kamanou inquired with representatives from ECOWAS as to why she was not given attribution in the EPP. (Id. ¶¶ 24, 57). In January 2009,

Kamanou commenced an action with the United Nations Dispute Tribunal ("UNDT") against the UNSD alleging "racial and intellectual discrimination" in the UNSD's attribution policy. (Id. ¶¶ 25, 59). In February 2010, ECOWAS wrote to the UNDT and claimed that ECOWAS, not the UNSD, had sole ownership over the copyright in the EPP. (Id. ¶¶ 27, 61). During the UNDT proceedings in March 2010, ECOWAS also testified under oath that ECOWAS, not the UNSD, made the decision to exclude Kamanou's name from the EPP. (Id. ¶¶ 27, 62). Following ECOWAS' claim of copyright ownership in the EPP, the UNDT dismissed Kamanou's action on the grounds that the United Nations, because it did not own the copyright in the EPP, did not have any contractual obligation to Kamanou relating to attribution. (Id. ¶¶ 28, 63). Kamanou appealed that decision to the United Nations Appeal Tribunal ("UNAT"), which, in March 2011, annulled the UNDT's judgment on procedural grounds. See Kamanou v. Secretary-General of the United Nations, Judgments U.N. Appeals Trib., No. 2011-UNAT-113 (2011) ("UNAT Judgment"), ¶ 26). The UNAT remanded the case for a trial de novo, finding that the UNDT had impermissibly addressed Kamanou's non-attribution claim separate from her other claims. (Id. ¶¶ 21, 24-26; Compl. ¶ 30).

### B.  Procedural Background

After receiving permission from the Court to proceed in forma pauperis, Kamanou filed her Complaint against ECOWAS on September 22, 2010. (Dkt. No. 2). Kamanou filed an Amended Complaint on April 26, 2011 (Dkt. No. 15), and ECOWAS answered on May 12, 2011. (Dkt. No. 17). The Court held a Rule 16 case management conference on May 31, 2011, after which Kamanou filed a Second Amended Complaint without seeking prior leave from the Court. (Dkt. No. 24). The Court accepted Kamanou's Second Amended Complaint for filing by Order dated July 12, 2011. (Dkt. No. 25). The Second Amended Complaint asserts five causes

3

of action:  (1) "unlawful copyright ownership"; (2) tortious interference with contract; (3) slander; (4) perjury; and (5) intentional and negligent infliction of emotional distress.

ECOWAS filed a motion to dismiss on August 9, 2011.  (Dkt. No. 30).  Kamanou filed her opposition on September 19, 2011.  (See Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Plaintiff's Second Amended Complaint, dated Sept. 16, 2011 ("Pl. Mem.") (Dkt. No. 34)).  Following an unsuccessful settlement conference with the Court on September 21, 2011, ECOWAS filed a reply on October 21, 2011.[1]  (See Defendant's Reply Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint, dated Oct. 21, 2011 ("Def. Reply Mem.") (Dkt. No. 35)).

## II.   DISCUSSION

### A.  Rule 12(b)(6) Standard

ECOWAS has moved to dismiss Kamanou's Second Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a 12(b)(6) motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 568 F.3d 374, 376 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  Mere "labels and

---

[1]      At the Court's suggestion, Kamanou was assigned pro bono counsel to assist her at the settlement conference.  (Dkt. Nos. 22, 23).

conclusions" or a "formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. Twombly, 550 U.S. at 555.

Complaints prepared by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." Peay v. Ajello, 470 F.3d 65, 67 (2d Cir. 2006) (citations and quotation marks omitted). Because Kamanou filed her pleadings pro se, the Court must liberally construe them and interpret her Second Amended Complaint "to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted). However, the Court need not accept as true "conclusions of law or unwarranted deductions of fact[.]" See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation and quotation omitted). In addition, the fact that Kamanou is proceeding pro se "does not exempt [her] from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation and quotation marks omitted).

When deciding a 12(b)(6) motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, the court may also rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). The court can also consider "matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted).

**B. Copyright Claims**

Kamanou's first cause of action is for an "illegal claim of copyright ownership." (Compl. ¶¶ 12, 65-80). Kamanou asserts that pursuant to 17 U.S.C. § 201(a) and (b) she is "the statutory

owner" of the copyright in the EPP (<u>Id.</u> ¶ 71) and that ECOWAS has unlawfully claimed

ownership over it.  (<u>Id.</u> ¶ 75).  In the alternative, Kamanou argues that if ECOWAS can establish

that it received the copyright from the United Nations and that it made the decision to exclude

her name from the EPP, she asserts two claims:  first, for "[b]reach of her moral rights to

authorship of the [EPP]" pursuant to Article 6*bis* of the Berne Convention for the Protection of

Literary and Artistic Works; and second, for "[i]ntellectual discrimination" in giving attribution

to other United Nations staff members but not to her.  (<u>Id.</u> ¶¶ 4, 79).

### 1.  Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege sufficient facts to

establish that (1) she owns a valid copyright, and (2) the defendant has copied the copyrighted

work without authorization.  <u>See</u>, <u>e.g.</u>, <u>Arista Records LLC v. Doe 3</u>, 604 F.3d 110, 117 (2d Cir.

2010) (citations omitted).  Here, Kamanou has not adequately alleged that she owns a valid

copyright in the EPP.  Citing to Sections 201(a) and (b) of the Act, Kamanou argues that she is

"the statutory owner [of the EPP copyright] and the United Nations the beneficial owner of the

[EPP] copyright."  (Compl. ¶ 71).  These provisions, however, do not lead to the conclusion that

Kamanou owns any such copyright.  Section 201(a) stands for the general principle that a

copyright "vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  Under the

"work made for hire" exception, however, "the employer or other person for whom the work was

prepared is considered the author" and therefore owns the copyright, unless the parties have

expressly agreed otherwise in writing.  17 U.S.C. § 201(b).  A work is made for hire if it is either

(1) "prepared by an employee within the scope of his or her employment[,]" or (2) "specially

ordered or commissioned for use . . . , if the parties expressly agree in a written instrument

signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101.

By any measure, Kamanou's work on the EPP was within the scope of her employment with the United Nations.  It is undisputed that Kamanou was a United Nations employee at the time of her work on the EPP, which, she stated in the Second Amended Complaint, was "part of her official duties within the approved workplan programme of the UNSD[.]" (Compl. ¶ 22). See, e.g., Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., No. 11 Civ. 1006 (AKH), 2011 WL 3820931, at *1 n.5 (S.D.N.Y. Aug. 30, 2011) (under "work made for hire" doctrine, copyright in audio recording of conference call belonged to defendant because participants were defendant's employees).  While Kamanou urges the Court to resist equating her use of the phrase "official duties" with the scope of employment as understood in Section 101—going so far as to make an untimely request to amend her complaint a third time to remove any reference to the EPP as part of her "official duties" (Pl. Mem. ¶¶ 45-47), see infra Section II.C.4—the facts here clearly establish that the preparation of the EPP was within the scope of Kamanou's employment. Kamanou points to several factors which she contends demonstrate that the EPP was not a "work made for hire":  the EPP was initiated by the UNSD at the request of ECOWAS (Id. ¶¶ 18-19, 21); the EPP grew out of other related projects at the United Nations (Id. ¶¶ 17-21); the EPP was "the very first regional study on Poverty Statistics" (Id. ¶ 22); and the EPP was not reflected in Kamanou's job description.  (Id. ¶ 24).  However, none of these factors overcomes the fact that Kamanou was assigned to work on the EPP by her employer, the United Nations (Id. ¶¶ 18, 45), and that she "prepared the [EPP] in her official capacity of project manager[.]" (Compl. ¶ 87). Kamanou also characterizes the extensive international travel that she undertook for the project as "official business" travel.  (Pl. Mem. ¶ 45).

In her opposition brief, Kamanou contends that the EPP was not a "work made for hire" because she was left with "no choice other than to work on" it due to her "contractual

obligations" with the United Nations.  (Id. ¶ 24).  But the obligation to complete the EPP

pursuant to an employment contract is precisely what makes the EPP a "work made for hire."

"[T]he essential factor in determining whether a work is made by an employee for hire is

whether the employer has the right to direct and supervise the actual performance of the work,

and whether he or she actually exercises that right."  Nadel & Sons Toy Corp. v. William

Shaland Corp., 657 F. Supp. 133, 135 (S.D.N.Y. 1987).  By virtue of its employment contract,

which evidently restricted Kamanou's ability to control her own work, the United Nations

apparently retained the ultimate right to direct and supervise Kamanou's performance on the

EPP.  Indeed, Kamanou acknowledges as much in the Second Amended Complaint, maintaining

that the EPP "is a property of the United Nations by virtue of" a provision in the United Nations

Staff Rules that all copyrights in any work performed as part of an employee's official duties

vest in the United Nations.  (Compl. ¶ 70).  Because the EPP is a "work made for hire," its

copyright vests—absent a contrary written agreement, which Kamanou has not alleged—in

Kamanou's employer, not Kamanou herself.  Kamanou thus does not own any copyright in the

EPP.[2]

---

[2]   Kamanou also argues that the "work made for hire" doctrine does not apply to the EPP
because the "UNDT and UNAT held that the EPP is not a [United Nations] publication
and thus that the [United Nations] has [sic] or never intended to have any right to
copyright in it[.]"  (Pl. Mem. ¶ 40).  That characterization is inaccurate.  The UNAT
found that the UNDT committed a procedural error in adjudicating the issue of non-
attribution separate from Kamanou's "claims of non-promotion, discrimination and
harassment[.]"  See UNAT Judgment ¶ 17.  As a result, the UNAT annulled the UNDT's
judgment and remanded the case to be tried de novo, id. ¶ 26, which means that any
finding by the UNDT that the EPP was owned by ECOWAS is void.  Kamanou has not
provided additional information regarding any further proceedings on this issue.
Moreover, notwithstanding Kamanou's misguided attempt to use a now-annulled factual
finding for preclusive effect, she has not explained why, if at all, a factual finding from
the United Nations would have preclusive effect in this Court or between these parties.

Kamanou has also not pled sufficient facts to satisfy the second element of copyright infringement—unauthorized copying. To show such copying, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (citation and quotation marks omitted). The act of copying entails the infringement of any of the copyright owner's exclusive rights set forth in Section 106, see, e.g., Arista Records, 604 F.3d at 117, which include, inter alia, "to reproduce the copyrighted work in copies[,]" "to prepare derivative works based upon the copyrighted work[,]" and "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership[.]" 17 U.S.C. § 106. Kamanou's infringement allegation does not contend that ECOWAS actually infringed her allegedly copyrighted material by violating one of the exclusive rights set forth in Section 106. Nor does she argue that the final version of the EPP is substantially similar to her contribution to the EPP. See, e.g., Lapham v. Porach, No. 06 Civ. 6861 (CM), 2007 WL 1224924, at *5-6 (S.D.N.Y. Apr. 25, 2007) (no copyright infringement where defendant did not copy). Rather, Kamanou's infringement claim is based on ECOWAS' "unlawful claim of copyright ownership" over the copyright in the EPP. (Compl. ¶ 75). This claim of ownership presumably arises from ECOWAS' statements—first in written correspondence and then in testimony before the UNDT—that it owned the copyright in the EPP. However, as ECOWAS argues (Def. Mem. at 6), Kamanou has not cited to any cases or statutory authority to identify a cause of action for a false claim of copyright ownership under the Act. But even assuming that such a cause of action existed, Kamanou's failure to plead sufficient facts to establish that she owns the copyright in the EPP forecloses any action for copyright infringement.

9

Kamanou's copyright claim should also be dismissed because, as ECOWAS argues (Id. at 5), she has failed to register her purported copyright in the EPP. Under Section 411 of the Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).[3] Although Section 411's registration requirement "does not restrict a federal court's subject-matter jurisdiction[,]" Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1241 (2010), it does "impose[] a precondition to filing a claim[.]" Id. The Supreme Court declined to address whether it was a "mandatory" precondition that a district court "may or should enforce sua sponte by dismissing copyright infringement claims involving unregistered works." Id. at 1249. Nevertheless, post-Reed Elsevier, other courts have dismissed copyright claims where a plaintiff cannot establish that she has met the registration requirement or that she falls within an exception to the requirement. See, e.g., Marketing Tech. Solutions, Inc. v. Medizine LLC, No. 09 Civ. 8122 (LMM), 2010 WL 2034404, at *5-6 (S.D.N.Y. May 18, 2010) (granting summary judgment on copyright infringement claim given plaintiff's inability to meet registration requirement).

Kamanou argues that "the lack of copyright certification should not warrant dismissal[.]" (Pl. Mem. ¶ 50). She relies on Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) for the proposition that "ownership and validity . . . must be presumed" in the "absence of evidence to the contrary[.]" But the presumption of ownership in that case was premised on the plaintiff's certificate of registration with the Copyright Office, which, absent contrary evidence, is considered prima facie evidence of ownership. See id. Kamanou

---

[3]     For purposes of this Report and Recommendation, the Court assumes without deciding—and Kamanou does not dispute in her opposition brief—that the EPP is a "United States work" within the meaning of Section 411.

has not alleged that she owns any such certificate related to the EPP, has made any efforts to

obtain registration of her purported copyright, or falls under any of the exceptions to the

registration requirement.  Accordingly, Kamanou does not meet the registration precondition,

and the Court should dismiss her copyright claim on this ground as well.

### 2.  Breach of Moral Rights to Authorship and Intellectual Discrimination

As an alternative argument, Kamanou alleges that if ECOWAS owns the copyright in the

EPP, its failure to give her attribution constitutes intellectual discrimination and a breach of her

moral rights to authorship under Article 6*bis* of the Berne Convention for the Protection of

Literary and Artistic Works (the "Berne Convention").  See Berne Convention for the Protection

of Literary and Artistic Works, art. 6*bis*, Sept. 9, 1886, S. Treaty Doc. No. 99-27.  The Berne

Convention is an international agreement protecting moral rights in literary and artistic works.

Article 6*bis* states in relevant part that "the author shall have the right to claim authorship of the

work and to object to any distortion, mutilation or other modification of, or other derogatory

action in relation to, the said work, which would be prejudicial to [the author's] reputation."  Id.

Congress has restricted the scope of the Berne Convention in the United States.  The Berne

Convention Implementation Act of 1988 declared that the Convention's "provisions are not

enforceable through any action brought pursuant to the Convention itself, and neither adherence

to the Convention nor the implementing legislation expands or reduces any rights under federal,

state, or common law to claim authorship of a work[.]"  Carter v. Helmsley-Spear, Inc., 71 F.3d

77, 83 (2d Cir. 1995) (citing Berne Convention Implementation Act of 1988, Pub. L. No. 100-

568, 102 Stat. 2853 (1988)).  See, e.g., Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 258-59

(S.D.N.Y. 2000) (no claim for copyright violation under Berne Convention because it does "not

offer an independent jurisdictional basis for suit in U.S. federal court").  Accordingly,

11

Kamanou's claim under the Berne Convention is not cognizable under U.S. law.

A cause of action for breach of moral rights only exists under the Visual Arts Rights Act (the "VARA"), 17 U.S.C. § 106A, an amendment to the Copyright Act enacted in 1990, two years after Congress implemented the Berne Convention. See, e.g., Pollara v. Seymour, 344 F.3d 265, 269 (2d Cir. 2003) (citations omitted). The VARA protects rights "analogous to those protected by Article 6bis of the Berne Convention, which are commonly known as 'moral rights.'" H.R. Rep. No. 101-514, at 5 (1990), reprinted in 1990 U.S.C.C.A.N. 6915, 6915. "With numerous exceptions, VARA grants three rights: the right of attribution, the right of integrity and, in the case of works of visual art of recognized stature, the right to prevent destruction." Carter, 71 F.3d at 83 (citations and quotation marks omitted). Although "[a]ll remedies available under copyright law . . . are available in an action for infringement of moral rights[,]" id., the VARA extends only to works of visual art. See, e.g., Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34 (2003) ("express right of attribution [in the VARA] is carefully limited and focused" to works of visual art). "A work of visual art does not include any . . . book, magazine, newspaper, periodical, data base, electronic information service, electronic information service, electronic publication, [] similar publication . . . [or] any work made for hire[.]" 17 U.S.C. § 101. Both as a written publication and as a work made for hire, the EPP is not a work of visual art and is therefore not protected by the VARA. See, e.g., Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 292 F. Supp. 2d 535, 554 (S.D.N.Y. 2003) (claim for breach of moral rights under VARA dismissed because images at issue were not works of visual art). Accordingly, Kamanou's claim for breach of her moral rights to authorship should be dismissed.[4]

---

[4]    In addition, Kamanou states that she will "address ECOWAS' motion to dismiss the

Finally, Kamanou does not cite, and the Court is not aware of, any statutory or common law basis for a claim of "intellectual discrimination." That claim should therefore also be dismissed.

## C. State Law Claims

### 1. Supplemental Jurisdiction

In light of the recommendation to dismiss Kamanou's federal claim, the Court should decline to exercise supplemental jurisdiction over her state law claims and therefore sua sponte dismiss those claims for lack for subject matter jurisdiction. See Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack . . . jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte.") (citation omitted). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity[.]" Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010) (because federal claims dismissed at beginning of case, "no colorable basis for . . . district court to exercise supplemental jurisdiction" over state law claim). Accordingly, in light of my recommendation to dismiss her federal claim, the Court should decline to exercise

---

moral right claim . . . provided that the court grants her leave to amend." (Pl. Mem. ¶ 48). For the reasons discussed in Section II.C.4, infra, the Court should also find that an independent basis for dismissal is Kamanou's abandonment of her moral rights claim.

13

supplemental jurisdiction over Kamanou's state law claims.

In addition, although Kamanou asserts that there is complete diversity of citizenship, (Compl. ¶¶ 15-21), this case does not meet the requirements for diversity jurisdiction. Section 1332 provides for federal jurisdiction of a civil action, assuming the amount in controversy requirement is met, "between citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332. Kamanou has not disclosed her citizenship in the Second Amended Complaint, but argues that because she has been domiciled almost continuously in New York since 1989 and "assimilated as [a] National of the United States[,]" she satisfies the requirements of Section 1332. (Compl. ¶¶ 16, 19). However, domicile and "assimilat[ion]" are irrelevant for purposes of diversity jurisdiction. See, e.g., In re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d 145, 163 (2d Cir. 1987). In any event, Kamanou states in her initial Complaint that she is a citizen of Cameroon—a reference, it bears noting, that was removed from the amended complaints. Kamanou submits that ECOWAS has its principal place of business in Nigeria (Compl. ¶ 20), and ECOWAS contends that it is an "African intergovernmental organization of African nations based in Africa, and is clearly not a US citizen." (Def. Mem. at 3 n.4). Accordingly, there is no diversity jurisdiction here such that the Court could consider the state law claims because "diversity is lacking within the meaning of [Section 1332] where the only parties are foreign entities[.]" Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002).

### 2. Tortious Interference Claim

Even if it were to assert supplemental jurisdiction, the Court should dismiss Kamanou's state law causes of action for failure to state a claim. Kamanou alleges that ECOWAS tortiously interfered with her employment contract with the United Nations in connection with her action

14

before the UNDT.  Specifically, Kamanou asserts that by "false[ly]" indicating—first by written

communication to the UNDT in February 2010 and then in oral testimony before the UNDT in

March 2011 (Compl. ¶¶ 82-83, 99)—that ECOWAS owned the copyright in the EPP and that it

made the non-attribution decision, ECOWAS interfered with Kamanou's contractual right to

internal judicial review.[5]  As a result of ECOWAS' "false written and oral testimonies of

copyright ownership[,]" Kamanou contends, the UNDT concluded that ECOWAS, not the

UNSD, held the copyright in the EPP and dismissed Kamanou's action.  (Compl. ¶¶ 97-99).  In

causing the UNDT action to be dismissed, Kamanou continues, ECOWAS committed a "serious

abridgment of the legal process before the UNDT."  (Id. ¶ 102).

        Kamanou has not pled sufficient facts to establish a tortious interference claim because,

as ECOWAS asserts (Def. Mem. at 11-12), the alleged breach of contract underlying her claim

---

[5]        In her opposition brief, Kamanou interposes several new theories, not articulated in the
        Second Amended Complaint, about how ECOWAS has tortiously interfered with her
        employment contract by, for example, inducing her to work on the EPP in lieu of other
        projects, requesting the UNSD to assign Kamanou to work on the EPP, and intending to
        publish the EPP without informing Kamanou.  (Pl. Mem. ¶ 54).  All but one of these new
        claims is untimely.  While Kamanou does not ascribe specific dates to her new
        allegations of tortious interference, the Court is able to determine that, with the exception
        of her claim that ECOWAS tortiously interfered with her contract by "intending to
        publish and copyright the EPP without disclosing it to" Kamanou (Id.), which may have
        taken place as late as November 2007 (Pl. Mem. ¶ 27), these new allegations all took
        place from July 2004 through July 2007.  (Id. ¶¶ 17-24).  Under New York law, a claim
        for tortious interference with contract is governed by a three-year statute of limitations,
        which begins when the contract in question has been breached.  See N.Y. C.P.L.R. §
        214(4); Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1287 (2d Cir. 1986).
        Accordingly, all but one of these new claims of tortious interference is untimely.

        Moreover, the Court should not consider any of these new tortious interference
        allegations, as Kamanou has raised them for the first time in her opposition brief.  "A
        claim for relief may not be amended by the briefs in opposition to a motion to dismiss."
        Disabled in Action of Metropolitan New York v. Trump Int'l Hotel & Tower, No. 01
        Civ. 5518 (MBM), 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003) (citations and
        quotation marks omitted).  These new theories amount to a third attempt by Kamanou to
        amend her complaint, which the Court should not permit.  See infra Section II.C.4.

did not occur. "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (citations and quotation marks omitted). "In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party." Robins v. Max Mara, U.S.A. Inc., 923 F. Supp. 460, 468 (S.D.N.Y. 1996) (citations and quotation marks omitted).

Here, Kamanou cannot prove, as she must, see Baylis v. Marriott Corp., 906 F.2d 874, 877 (2d Cir. 1990) (citations omitted), that her contractual right to judicial review has been breached. As described earlier, see supra n.2, Kamanou's judicial proceedings at the United Nations are still ongoing. The UNAT annulled the UNDT judgment and with it, the underlying factual finding by the UNDT that ECOWAS owned the copyright in the EPP. The UNAT remanded Kamanou's case to the UNDT for trial de novo. See UNAT Judgment ¶ 26. Because Kamanou is still pursuing her legal rights at the United Nations, her claim that ECOWAS "directly interfered with her contractual relationship with the UNSD and with the UNDT's judicial review" is, if anything, premature. (Compl. ¶ 95). ECOWAS cannot be said to have caused the UNSD to breach Kamanou's right to judicial review if, in fact, her right to pursue judicial review has not been breached—leaving aside whether such a breach, had it taken place, even constitutes an "actual breach of the contract" under New York law. Furthermore, "'[d]eliberate interference with [Kamanou's] contractual rights that causes damage' is not enough to succeed on a tortious interference with contractual relations claim" without a

16

corresponding breach of contract. Dorsett-Felicelli, Inc. v. Cnty. of Clinton, No. 04 Civ. 1141

(LEK) (RFT), 2011 WL 1097859, at *3 (N.D.N.Y. Mar. 22, 2011) (quoting NBT Bancorp Inc. v.

Fleet/Norstar Fin. Grp., Inc., 644 N.E.2d 492, 495-96 (N.Y. 1996)).  Absent an alleged breach of

contract, therefore, Kamanou's tortious interference claim fails.  See, e.g., Anderson v. Aset

Corp., 416 F.3d 170, 171 (2d Cir. 2005) (affirming dismissal of suit for failure to plead breach of

contract); Broughel v. Battery Conservancy, No. 07 Civ. 7755 (GBD), 2009 WL 928280, at *9

(S.D.N.Y. Mar. 30, 2009) (tortious interference claim insufficient as a matter of law where no

breach of contract established).  Accordingly, the Court should dismiss Kamanou's claim for

tortious interference with contract.

### 3.  Slander Claim

Kamanou argues that ECOWAS committed slander by communicating to a third party at

the United Nations that she did not participate in one of two days of meetings in connection with

the EPP in Abuja, Nigeria in August 2006.  (Compl. ¶ 110).[6]  Under New York law, the elements

of slander are "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party,

(iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the

speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by

privilege."  Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001) (citations omitted).  To meet

the sixth element, a plaintiff must provide evidence of special damages, meaning the loss of

something having economic or pecuniary value.  See, e.g., Celle v. Filipino Reporter Enters. Inc.,

---

[6]    In the Second Amended Complaint, Kamanou alleges that a second statement—that
ECOWAS reported to the UNSD that Kamanou had filed a $4 million lawsuit against
ECOWAS—was slanderous.  (Compl. ¶ 111).  In her opposition brief, however,
Kamanou concedes that this statement is not slanderous because "the statement was
true."  (Pl. Mem. ¶ 64).  As Kamanou acknowledges, and as is well-established, "truth is
an absolute, unqualified defense to a civil defamation action[.]"  Guccione v. Hustler
Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) (citations and quotation marks omitted).

209 F.3d 163, 179 (2d Cir. 2000).  Alternatively, a plaintiff can allege that the defamatory

statement falls within one of four established categories of defamation per se that does not

require proof of special damages to be actionable.  See, e.g., Zherka v. Amicone, 634 F.3d 642,

645 and n.6 (2d Cir. 2011).

The essence of ECOWAS' allegedly defamatory statement is that Kamanou missed one

day of a two day meeting that took place during the final development of the EPP in August

2006.  Given the nature of that statement, the only defamation per se category potentially

applicable here is a statement that "tend[s] to injure another in his or her trade, business or

profession[.]"  Liberman v. Gelstein, 605 N.E.2d 344, 347 (N.Y. 1992) (citations omitted).

While Kamanou alleges that the statement "cast doubt on [her] dedication to her work and

significantly damaged her professional reputation" (Pl. Mem. ¶ 63), it does not meet the standard

for defamation per se.  The failure to attend one day of meetings is simply not "a matter of

significance and importance and is not a defamation of a kind incompatible with the proper

conduct of [Kamanou's] business."  Aronson v. Wiersma, 483 N.E.2d 1138, 1140 (N.Y. 1985)

(oral statement made by government leader regarding dissatisfaction with one of his employees

did not constitute slander per se) (citation, quotation marks, and alterations omitted).  Viewed in

the context of Kamanou's position and her involvement in the EPP, which included multiple

trips abroad and several meetings, ECOWAS' statement does not insinuate that Kamanou

habitually missed meetings or otherwise demonstrated a lack of professional capacity.

Because the statement at issue does not constitute defamation per se, Kamanou must, but

fails to, plead special damages to survive a motion to dismiss.  Although Kamanou claims that

"[a]s a direct or indirect result of [ECOWAS'] defamation," she has suffered "anguish, health

deprivation and career demolition" in the amount of "Five Hundred Thousand ($1,000,000)

18

dollars [sic][,]" she does not provide any basis whatsoever for that alleged economic loss. (Compl. ¶¶ 117-18). See Nunez v. A-T Fin. Info. Inc., 957 F. Supp. 438, 441 (S.D.N.Y. 1997) ("To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice.") (citations omitted); see, e.g., Aronson, 483 N.E.2d at 1140 (loss of salary and benefits insufficient as special damages where no causal connection established between employment and alleged defamatory statement).  On a final note, Kamanou has failed to provide the date of ECOWAS' statement, which frustrates the Court's ability to determine whether her claim is timely under New York's one year statute of limitations. See N.Y. C.P.L.R. 215(3); see, e.g., Reeves v. Continental Equities Corp. of Am., 767 F. Supp. 469, 473 (S.D.N.Y. 1991) (no defamation claim where plaintiff did not allege dates "with sufficient particularity"). Accordingly, for these reasons, Kamanou's slander claim should be dismissed.

### 4. Kamanou's Remaining Claims and Request for Leave to Amend

Kamanou acknowledges that she cannot state a claim for perjury or intentional and negligent infliction of emotional distress. (Pl. Mem. ¶ 11 ("Plaintiff first acknowledges that courts in the Second Circuit do not recognize a private right of action for perjury. . . . Plaintiff chooses not to pursue her claims against ECOWAS for negligent and intentional infliction of emotional distress.")).  However, she only agrees to "drop these claims if the court grants her leave to amend her 2d. Amend. Compl." (Id. ¶ 65).  Because Kamanou has not made any formal motion for leave to file her complaint, the Court need not address her informal request.  In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss.").

19

If the Court reaches the issue, it should deny her leave to amend.  Although the Federal

Rules of Civil Procedure provide that leave to amend should be "freely give[n] . . . when justice

so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court may deny leave based on "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment[.]"  Local 802, Associated Musicians of Greater

New York v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998) (quoting Foman v. Davis,

371 U.S. 178, 182 (1962)).  Here, Kamanou's attempt to condition her consent to dismiss her

perjury and emotional distress claims on the Court's granting her leave to amend the complaint is

entirely improper.  Because ECOWAS moved to dismiss all of Kamanou's federal and state law

claims, she was obligated to present arguments as to each cause of action, regardless of any

proposed amendment to the complaint.  Her failure to do so constitutes abandonment of those

claims.  See Lipton v. Cnty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2005) (courts "may,

and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's

arguments that the claim should be dismissed"); see, e.g., Britt v. Merrill Lynch & Co., Inc., No.

08 Civ. 5356 (GBD), 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011) (plaintiff's failure to

rebut defendant's motion for summary judgment on state law claim constituted abandonment);

Thomas v. Atl. Express Corp., No. 07 Civ. 1978 (SCR), 2009 WL 856993, at *2 (S.D.N.Y. Mar.

31, 2009) (due process claim abandoned where plaintiff failed to respond to defendant's

arguments to dismiss).  Accordingly, Kamanou's claims for perjury and intentional and negligent

infliction of emotional distress are deemed abandoned and should be dismissed by the Court.[7]

---

[7]     In any event, Kamanou's claims for perjury and emotional distress are without merit.  No
cause of action permits Kamanou to sue for perjury, see Luckett v. Bure, 290 F.3d 493,
497 (2d Cir. 2002), and ECOWAS' alleged conduct was not sufficiently outrageous to

Moreover, any amendment to Kamanou's Second Amended Complaint would be futile. The only proposed amendment that Kamanou seeks to make is to "use the language of the Copyright Act instead of 'official duties'" as it relates to ECOWAS' argument that the EPP is a "work made for hire." (Pl. Mem. ¶ 47). As ECOWAS argues (Def. Reply Mem. at 8), the proposed amendment would be futile. The Court's conclusion, see supra Section II.B.1, that the EPP is a "work made for hire," is based on Kamanou's employment relationship with the United Nations, not solely on her use of the phrase "official duties" in the Second Amended Complaint. The removal of that language would not, therefore, change the Court's finding that the EPP is a "work made for hire" and that, as a result, the copyright claim should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, I recommend that the motion to dismiss be granted.

### PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. **FAILURE TO FILE OBJECTIONS WITHIN**

---

support an emotional distress claim. See Howell v. New York Post Co., 448 N.E.2d 86, 90 (N.Y. 1983) (emotional distress claim requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (citation and quotation marks omitted).

**FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL**

**PRECLUDE APPELLATE REVIEW.**  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner &

Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92

(2d Cir. 2010) (citing Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P&C Food

Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If

Plaintiff does not have access to cases cited herein that are reported on LexisNexis or Westlaw,

she should request copies from Defendant's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d

Cir. 2009).

Dated:  New York, New York
       January 19, 2012

                                      JAMES L. COTT
                                      United States Magistrate Judge

**Copies of this Order have been sent by mail to:**

Gisele Kamanou
23 Muir Place
New Rochelle, NY 10801

Hillel Ira Parness
Robins, Kaplan, Miller & Ciresi, LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022

Pro Se Office
Room 230

Hon. George B. Daniels